MEURER STEEL BARREL CO., Inc., v. NATIONAL ENAMELING & STAMPING CO.

(District Court, E. D. New York.   April 12, 1917.)

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—STEEL BARREL.
    The Young patent, No. 891,895, for a metal or steel barrel with the body and head united by a fluid-tight solderless point, was not anticipated and discloses patentable invention. Claims 1 and 3 also *held* infringed, and claim 2 not infringed.

2. PATENTS ☞239—INFRINGEMENT—ADDING UNNECESSARY PARTS.
    The addition of a well-known or unnecessary step will not avoid infringement, even though the addition is claimed as an improvement.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 377, 378.]

In Equity.   Suit by the Meurer Steel Barrel Company, Incorporated, against the National Enameling & Stamping Company.   On final hearing.   Decree for complainant.

Emery, Booth, Janney & Varney, of New York City (Robert S. Blair, Frederick L. Emery, and Melvin G. Palliser, all of New York City, of counsel), for plaintiff.

Guggenheimer, Untermyer & Marshall, of New York City (Louis Marshall and A. V. Cushman, both of New York City, of counsel), for defendant.

CHATFIELD, District Judge.   The plaintiff charges infringement of patent No. 891,895, granted July 30, 1908, to Frank E. Young, on an application dated April 27, 1907.   Young assigned the patent to the Brooklyn Range Boiler Company, a New York corporation.   In 1913 the plaintiff company was incorporated for the purpose of manufacturing under this patent, in connection with other work, and received an assignment from the Brooklyn Range Boiler Company, which was dated and delivered on the 31st day of December, 1913, but was not recorded until August 11, 1915.

The defendant is a corporation with a large plant in the Eastern district of New York, which performed, under contract, for the plaintiff, part of the work upon the material for the barrels constructed and sold by the plaintiff during the years preceding 1914.   The defendant thus had in its factory some machinery which was built or had been adapted to the needs of barrel making, and, when the plaintiff transferred its work to its own factory, the defendant installed other machinery and proceeded to place upon the market barrels, which it now seeks to justify as properly competitive, in a commercial sense, with those of the plaintiff, and which it denies are an infringement of the Young patent.

[1] The patent in suit is stated in the specifications to relate—

"to metal or steel barrels or similar receptacles in which the heads, formed separately from the body, are secured to the latter in such manner that a fluid-tight receptacle is provided; this being accomplished in an improved manner by means of a malleable iron clamping ring."

There are several fundamental or obvious propositions, based upon the prior art, which must be stated in order to consider the disclosure of the earlier patents and the scope of the claims of invention by Young:

These steel barrels are cylindrical and of uniform diameter. The joint between the head and side of the barrel (like that in a wooden barrel) is completed by the clamping pressure of a hoop or ring, which is forced upon and around the chime of the sides of the barrel. The metal barrel seam must be air and liquid tight, and this object is to be attained without the use of solder in the art with which we are concerned. The hoop or metallic ring must be held on by some clamping force, to replace the nails in the ordinary wooden barrel hoop, and must subject the joint to some wedging action to take the place of that provided by the increase in diameter in the ordinary barrel as the hoop passes on toward the center of the barrel. The prior art shows that the joint itself, from the standpoint of being liquid or air tight, and from the standpoint of strength, whether it be stiffened by its form and shape or actually reinforced (that is, armored) by additional metal, was a feature old in analogous arts and old in the making of metallic barrels, so far as the general propositions of these constructions are concerned.

The language of the plaintiff's patent is simple, and, aside from one literal error in claim 2, is not open to much dispute as interpreted by the experts in the case. The patentee states that his construction—

"does not require the formation of a recess in the side wall of the clamping ring, for the purpose of forming a shoulder, which cannot ordinarily be of very great depth without materially increasing the thickness of the ring, which is undesirable, and which, moreover, does not permit of the folding of one member around the folded metal of the other member, so as to effectively interlock these two members, independently of the clamping ring."

The recess, into which the metal of both the side and the head of the barrel is forced, creates the shoulder of the prior art, referred to by Young, by the change in diameter. The bent-over portion must be pulled out straight in order to effect the release of the metal from the recess. It is evident that, if the clamping ring is to be made with any considerable strength or armoring power, it must present sufficient metal to contain the recess. It is also evident that tightness (both for liquids and air or gas) and the durability of the seam will depend upon the amount of compression and of compressed surface which is furnished in the seam, if no solder or adhesive material be used to accomplish that result. So, as Young says, he seeks to save material in the clamping ring, and to avoid the difficulties presented in rolling up or folding over each other the head and side into a seam and then forcing the seam over the shoulder of the groove or recess, by using the seam as the shoulder about which the clamping ring is rolled down.

It is evident from the prior art that the exact shape of this shoulder, or form in which this seam is rolled up, or the number of folds made, or the precise order of the various thicknesses which comprise the fold, would not limit the patentability of this idea of so clamping the seam as to roll the malleable metal into a gas and water tight joint, while furnishing the protecting armor and the locking or clamping fea-

ture of the hoop of metal. By folding over the side of the barrel, Young presented a shoulder with two thicknesses of metal at the lower edge of the seam. One thickness from the head was added to this by bending the flange of the head of the barrel over the folded side. He carried the flange far enough around so that it not only entered into the formation of the shoulder, but was bent under the folded parts of the side of the barrel to tighten the seam. He then carried the ring of his chime hoop or clamping ring entirely around the seam with which he had thus formed the shoulder on the outside of the barrel, and bent this flange of the metallic clamping ring sharply under this so-called shoulder in the manner indicated in the drawing.

The claims of the patent are as follows:

"1. A barrel or receptacle comprising a body and a head united by a fluid-tight, solderless joint, said body and head being bent one upon the other to form at least four thicknesses of metal, thereby to form a shoulder made up of at least two thicknesses of metal, and an annular malleable clamping ring having a bendable locking flange overlapping said bent portions, with its free end bent at an abrupt angle to such flange, so as to overlap said shoulder, thereby positively to lock said bent portions within the walls of said ring.

"2. A barrel or receptacle comprising a body and a flanged head united by a fluid-tight, solderless joint, said flange and head being bent, one upon itself a plurality of times, and the other upon such bent portions to form five thicknesses of metal, and thereby forming a shoulder made up of three thicknesses of metal, and an annular malleable metal clamping ring having a bendable locking flange, with its free end bent at an abrupt angle to such flange, so as to overlap such shoulder, thereby positively to lock said bent portions within the walls of said ring.

"3. A barrel or receptacle comprising a body and a flanged head united by a fluid-tight, solderless joint, said body having a part bent upon itself, and said flange being bent around such bent portion of the body and forming therewith a shoulder located exteriorly of the barrel, and a malleable metal clamping ring having a part thereof located interiorly of and in parallelism with the flanged head, and a bendable locking flange located exteriorly of and in parallelism with the bent portions of such head and body, with its free end bent inwardly at an abrupt angle to such flange, so as to overlap such shoulder, thereby positively to lock said bent portions and body within the walls of said clamping ring."

Claim 2 differs from claim 1 only in the additional thickness of metal in the shoulder, and in stating that the side is bent upon itself; while claim 3 says that the body is bent upon itself, and that the hoop or ring is to have parts "in parallelism" with the flange of the head and with the rolled-up seam, while reaching around the seam far enough to be bent under and to clamp or lock the seam with a closing up or tightening force.

From 1908 to 1913 the Brooklyn Range Boiler Company manufactured its sheet metal into cylinders, stamped or cut out the sheet metal disks for the heads of the barrels, and formed the hoops or clamping rings from channel iron bars. All of the parts were then galvanized, and the heads embossed with the name and device of the customer ordering barrels, by the defendant in its factory. The evidence shows that the defendant company and its workmen were familiar with the general style and construction of the so-called Young or Meurer barrel, and some of the witnesses testify that the chime ring of the general type used by the plaintiff, and of the type first placed on the market by

the defendant, were referred to in the factory as the Young or Meurer chime. The latter statement is denied by the defendant, but it is apparent from the record that before the time of the formation of the Meurer Steel Barrel Company, and soon after the Brooklyn Range Boiler Company ceased to have part of the work done in the defendant's factory, the defendant placed upon the market a steel barrel, of which a sample has been sufficiently identified as purchased in May, 1913, and marked in court as "Defendant's Exhibit 8," or "Barrel A."

Some of the witnesses for the defendant testify that this particular form of barrel was unintentional, and the result of the use of blanks for the barrel heads on which the flange was too narrow; that is, the material did not extend far enough to bend around the folds of the barrel side and to be tucked up under or within that fold. The defendant claims that this particular exhibit was the result of some unnoticed failure to turn out a perfect barrel. The record, however, shows that a great number of such barrels were placed upon the market, and it would appear that, during the years from 1912 to 1914, the defendant made and sold barrels of this general type, and with a chime ring substantially like that of the patent in suit, as applied in the commercial form of barrel in the plaintiff's output.

At some time during this period from 1912 to 1914, the attention of the defendant was called to the possible charge of infringement, and particularly by a letter dated June 16, 1913. The defendant then denied any actual infringement, or intent to infringe, and soon after described the form of barrel which it was then manufacturing, and which it has since sold, and about which the principal issue in this case turns. When Young applied for his patent, his application was rejected upon the patents to Booth, No. 516,073, of March 6, 1894; Scaife, No. 6,391, reissued April 20, 1875; Hardie, March 6, 1906, No. 814,375 (which is not shown in the present record); and a patent to Reynolds, No. 621,540, March 21, 1899.

The patent to Booth covered a hot water boiler for stoves or ranges. It showed a seam formed by bending over the side of the boiler, around the flange of the head or end of the boiler, and the clamping of a metal ring, which extended over and down on both sides of the seam or fold just described. It is evident that the pressure, as well as the tendency to leak, in a boiler of this sort, would come from the inside of the boiler. The ring was expressly stated to be U-shaped in section, and to be bent underneath the turned-over flange of the side of the boiler, so as to enable the thin metallic end or head to the boiler to resist the pressure occurring at the joint, without the use of heavier material in the sides and ends of the boiler itself. Booth, however, planned to use solder in making a tight joint, and was not concerned with the problem of furnishing great resistance to an external force exerted against the head of the boiler. It is evident that, if the boiler were filled with water under pressure, the strain would be in general in the opposite direction.

The Scaife patent, which was nearly 20 years older, described a sheet iron keg for coal oil, in which the chime (or chine as Scaife called it) was formed by overlapping and rolling up the sheet of metal

forming the sides with the sheet of metal forming the head. Scaife was not concerned with an absolutely water-tight joint under pressure, nor with the question of a joint furnishing great power of resistance, and his patent, so far as we are concerned, teaches only the general idea that a lapped seam, of the type used in many of the patents of the art prior to Young, could be formed from sheet metal, and would be sufficiently strong to serve as the edge or chime by which the keg could be easily handled.

When we consider the Reynolds patent, we have passed over much of the prior art, and must at once notice the statement by Reynolds that his improvement is applicable to—

"all kinds of receptacles or reservoirs and metallic packages, in which the drum or body is provided with one or more heads—such, for instance, as preserving cans, barrels, pails, range boilers, and many other articles too numerous to mention."

The plaintiff seeks to disregard the effect of much of the prior art by pointing out that the patents relate to pails, coal hods, range boilers, and other articles, which are not barrels. But in Reynolds we have the plain statement by that patentee, whom Young was using as the basis of his own improvement, that these objects are within the scope of the Reynolds patent. The plaintiff's contention is not of great importance in this case, for the patents referred to described ideas that were old and unpatentable as such at the time of the Young application. The validity of the Young patent does not depend upon its novelty in these respects, and their analogy and application to the issue must be admitted.

In a patent to Bruson, No. 132,895, November 12, 1872, we have, as was shown in Scaife, a flange or edge produced at the bottom of sheet metal ware, requiring no solder for dry substances, and formed by the folding over of the side, around the rolled-up flange of the bottom of the vessel. Bruson also shows a groove or notch at the point where the bottom comes in contact with the side, and into which the bottom is forced and held by the pressure of the folded over flanges. This idea was applied to barrels in the Caird patent, No. 473,495, April 26, 1892, and Caird shows a number of forms of rolled-up or folded seams, about which he shrinks a metallic hoop in order to make a water-tight barrel.

It might be noted that the Wilson patent, No. 24,772, of July 12, 1859, reissued January 6, 1863, as No. 1,383, shows the bent-over or folded metallic seam formed by the use of a mandrel, but not making, as in Scaife, a chime ring to the keg or barrel.

On January 29, 1889, patent No. 397,047 was issued to Barrath, for coal hods, in which the folded-up seam of the Wilson powder keg was used to form the bottom seam of the coal hod. A flange or standard for the coal hod was furnished by adding a circular sheet of metal, which lapped into the seam from the opposite direction to that of the sides of the hod, and which was folded up so as to make a stiff joint without the use of solder.

On January 8, 1896, a patent was granted to A. V. Trust, No. 532,-117, for a wash boiler, in which he evidently intended to provide a

tight joint by the use of solder, but which, like the Barrath coal hod, was raised from the surface of the stove by the bead or rolled-up seam made with the flanges of the side and of the bottom. Trust placed about this rolled-up seam a sheet of thin metal, which he crimped in on each side above the projecting flange. This outside ring added some strength as well as protection, but did not render the joint impervious to water, nor greatly increase its resistance to pressure, and would not anticipate the use of a metallic chime ring upon a barrel. It must also be noted that the wash boiler is not circular, and the protecting ring is not shaped, nor of such weight as, to resist heavy blows, and can be distorted in a far different way than the chime ring of the circular barrel.

On July 10, 1900, one J. E. Byrnes obtained a patent, No. 653,439, for the insertion of a sheet of anti-rust material inside the bottom of a pail or other vessel, but with the flange projecting between the flange of the bottom and of the sides, so as to be rolled up into the seam, and thus to present the surface of the anti-rust material in the form of a thin sheet, which was fastened in place by embodying it in the beading or edge of the vessel. This teaches no more than the Trust patent, or any of those patents of the prior art, as to the possibility of folding up a piece of metal in a seam or beading, so as to hold it in place and form the beaded rim by the folding up of the sheets of metal.

The next patent was issued upon the 16th day of March, 1880, No. 225,499, to F. A. Walsh, and here a new idea entered in. Walsh used a thin sheet of metal, like the Byrnes anti-rust sheet, to act as a temporary or thin cover to a paint can or such receptacles, with the idea that this cover could be easily punctured or removed, and yet would render the vessels tight until their contents were desired. In order to secure this result, Walsh placed over the thin sheet of metal a ring for receiving the cover and with a projecting flange, which was bent around and tucked under the flange of the thin sheet, and also under the side of the can, thus fastening the side, the thin top, and the ring together in the bead or rim. Walsh thus made out of this tin beading a structure in which he had the side, the flange of the top, and the overlapping or projecting rim, which was bent around and tucked up into the seam in such a way as to bind the parts together sufficiently to meet the needs of a paint can, and to show the possibility of making a fluid-tight joint, under ordinary pressure, by the rolling up of thin metal into a beaded seam. He may have contemplated the use of solder, if necessary. But he does not show a chime ring in the sense in which we find that idea used when we come to the Reynolds patent. Walsh merely makes use of the old ideas of the tucked-in seam and of folding flexible metallic sheets about other folds, to form a shoulder. He tucks in his outside sheet, so that it is of itself made a part of the joint, instead of crimping it around, as was well known in the prior art. He thus makes his joint tight, and illustrates the possibilities of folding up the parts into a seam.

This idea is more plainly illustrated in the Patterson patent, No. 674,305, May 14, 1901. Patterson makes an improvement for metallic containing vessels, such as cans, by forming an air-tight joint between

the vessel and the cover. Patterson states that the idea of bending the edge of the cover underneath a shoulder formed by the beaded edge of the can was old, and he therefore does not bend or tuck the edge of the cover under the beading on the side of the can, but leaves it fitting down over this beading, and then at a number of points around the sides has flexible wings, which can be crimpled or bent under, so as to tighten the joint.

The next step was the application of these ideas to the needs of a metallic barrel, and resulted in the Reynolds patent, No. 621,540, March 21, 1899, which has been quoted above with respect to its dependence upon the prior art. Reynolds describes an improvement in the means for locking the head to the drum or body of the barrel, and also in the reinforcing means by which he secures the required strength at the joint or chime ring. The Reynolds barrel was cylindrical in form and had a malleable iron chime ring, with an outstanding flange. This ring was to be placed inside the flange turned up around the head of the barrel, which in turn was inside the flange of the barrel side. The malleable iron flange of the chime ring was forced down against the outside of the barrel, and thus the flanges of the head and side were pressed into a recess on the inside of the chime ring. As all of the material was malleable or ductile, the diameter of the barrel side and head, when forced into the recess, was thus reduced, and the flange of the chime ring came to rest against the shoulder formed where the side was pressed into this recess, in such a way that the outer surface of the chime ring presented a circumference equal to that of the outside of the barrel.

Reynolds thus, by mere compression and reduction of diameter, joined together the head and the side, and bent over the flange of the chime ring in the same way in which the hoop upon an ordinary wooden barrel presses the outside rim of the head into the groove or recess in the sides of the barrel, and thus forms the outside or protecting hoop which in the old Caird patent, as in wooden barrels, was provided by shrinking on an external hoop. But Reynolds obtained also the protecting rim presented in wooden barrels by the edge of the wooden hoop, or, as shown in the Booth range boiler patent, by the metal of the U-shaped ring. But, more than this, he fastened the hoop in place by the resistance of the hoop against the shoulder formed when the edges of the head and sides were reduced in circumference and brought into the recess of the chime ring. When the flange of the ring was pressed down into place, this shoulder could not be straightened out without breaking the chime ring, unless such great pressure was used as to forcibly draw out, over the larger diameter of the shoulder, and from the frictional contact of the parts, either the side or the head of the barrel. Such withdrawal could not be accomplished from the outside of the barrel by any ordinarily expectable accident or blow. But Reynolds, in addition to this, secured a fluid-tight joint by the pressing together of the malleable or ductile parts which were subjected to the strain presented when the flange of the chime ring was bent into place. This Reynolds patent proved to be commercially practical and apparently valuable.

In 1906 a patent was published in France, upon the 6th day of July (for which an application was made in the United States on the 18th of January, 1907, but upon which the patent was not issued under No. 1,017,427 until February 13, 1912, and which, therefore, is not an anticipation), by which one Le Febvre combined the shrunk-on hoop of Caird with the projecting rim of the prior art, in order to form a joint sufficiently protected for the purposes of a metallic barrel, with rolled up or folded over seam. The Le Febvre patent, however, involves other features in the formation of the barrel, and, even if it were early enough to be an anticipation of Young, shows no improvement over Reynolds in the direction in which we must travel in order to get to the Young patent.

Young states in his specifications that in order to form the shoulder (the necessity for which was well known) he desired to avoid the extra thickness required for the recess in the ring. He also wished to avoid the necessity of clamping the chime ring by an extra bend in the lower part of the chime ring and next to the head of the barrel. In Reynolds the chime ring does not project, so as to form the surface upon which the barrel rolls. The outer surface of the Reynolds barrel side is flush with the chime ring. In Young the outer surface of the chime ring forms a hoop, and the inner surface of the chime ring may be straight (i. e., flat) or bent. It is in all cases parallel to the inner side of the flange of the barrel head in the part between the head itself and the rolled up seam.

There would be no patentable novelty in thickening the material of the Reynolds chime ring, so that the surface on the inside or toward the center of the barrel would be flat. Such a ring would merely use extra metal, and would not give protection to the seam against blows from the outside. Young sought to obtain this protection and a tight seam, while making his chime ring of a flat piece, which would not require the extra rolling for the formation of the recess and would save metal.

The testimony in this case shows that in the defendant's factory in 1913, when a change was made from the earlier form of chime ring, the material on hand was prepared for use by rolling a recess into the malleable bars then on hand, until material of this shape could be supplied, with the recess constructed at the rolling mill. This material began to be used in November, 1914.

Young created the shoulder, which he recognized was necessary, by rolling up the side of the barrel and folding around this the flange of the head, so as to make the beaded rim and the interlocking seam shown in the tin receptacles of the prior art. He thus produced a seam which, when made of malleable sheet iron, would of itself be strong enough to resist ordinary strains and might be water-tight. In other words, he then had the seam of the Byrnes anti-rust vessel and that of the Scaife coal oil barrel, but with a slightly different form of fold in the beading. No novelty was presented by the mere form of the fold. But in his claims he describes different thicknesses of metal forming this fold, as different embodiments of his way of creating the shoulder which, as has been said, he recognized must be pres-

ent if the chime ring was either to be locked on or to furnish any clamping effect with respect to the seam itself. He secured this clamping effect, and locked the chime ring on, by carrying over the outstanding flange and forcing it around the beaded seam and then bending it sharply in against the side of the barrel. He then had the old idea of the beaded rim, which was capable of being compressed, when made out of malleable metal, into a water-tight joint. He used the old idea of a shoulder, which, by the interposition of a ring of larger circumference, would prevent the straightening out of the metal flange or seam, after it had been drawn into the smaller diameter. He reinforced the resistance to the stripping off of the metal which formed the smaller ring, and absolutely prevented the pulling out or opening of the folds (which constituted the seam as well as the shoulder), by locking them up inside the chime ring, which was the adaptation of another old idea, but which was applied to new uses.

Young thus secured, also, the protecting or armor feature of the Booth, Trust, Barrath, and Reynolds patents, as a part of the mechanical or physical conditions resulting from forming a water-tight seam under the application of that force which was used to bend around and into the clamping position the projecting flange of the chime ring. He pointed out in his specifications and in his discussion with the Patent Office the differences between his application and the Reynolds patent. In so doing he assumed the lack of patentability in the old ideas of the prior art. He distinguished his patent from Reynolds, in that the presence of a shoulder, upon which to clamp down his ring and the flanges of the side and head of the barrel, was not required within the chime ring itself. He pointed out the desirability of being able to roll up the beaded seam, and form the shoulder for the clamping purpose, outside of the chime ring. He shows the economic advantage of rolling up this beaded seam as the chime ring is folded around. Thus he produces a tighter joint than if the seam were not rolled up within the flange; and he also pointed out the freedom from distortion or dangerous strain which would be presented if a previously rolled-up beaded rim were bent back and compressed into a recess, as would be the result if one sought to use the Reynolds chime ring upon a beaded seam like those of the prior art.

The defendant manufactures its barrels by forcing a rolled-up or interlocked beaded seam into a recess like that of Reynolds, which it forms either in a chime ring of uneconomical thickness, as Young says, or into a chime ring which is so rolled as to be bent in order to create the recess required. But the defendant does not then, as in Reynolds, use a flange short enough to also go into the recess, while pinching the folded seam against the upper side of the shoulder. On the contrary, it carries the flange beyond the shoulder in the chime ring, and under the shoulder of the seam, just as is done in Young.

The defendant, after the plaintiff called its attention to the charge of infringement, continued to make the seam tight and unrollable by compressing the outstanding flange over the seam. It provided resistance to the removal of the chime ring, or the pulling out of the parts of the seam, by rolling the flange of the chime ring around and under

the seam, so as to bend the flange at an "abrupt angle" below the shoulder of the seam itself. It adds from the prior art an additional fold to the edge of the barrel head, by which this edge is tucked up inside of the bent-over flange of the side, and thus seeks to avoid the language of claims 2 and 3, which state that the body is bent over upon itself.

But in practice this tucking in of the edge of the head does not prevent the actual bending of the body upon itself, nor does a variation in the form of the seam, which was obviously old in the prior art, release the defendant from the charge of infringement, if the defendant's structure makes use of the different seam in the identical way described in the claims. The one is a mechanical equivalent of the other. An inspection of the drawings will show that the seam and chime ring of the defendant's barrel A are substantially like those of the plaintiff, in its commercial form, which corresponds with claim 1 of the patent.

The defendant's barrel B and the so-called defendant's Toch barrel, or the barrel made for the Toch Company, contain the folded seam to form the shoulder, the light weight chime ring, with a part in parallelism to the flanged head, and with the locking flange in parallelism to the bent parts forming the seam. They show the protecting features of the chime ring, which serves exactly the same purposes as those covered by the claims for the ring of the patent in suit, in forming a fluid-tight, solderless joint locked within the walls of the ring. They show the shoulder described by Young resisting any force which would tend to pull the seam out of the chime ring, and make use of the pressure of the outstanding flange as turned over around this seam, instead of as pinning it down against the upper side of the shoulder of the Reynolds ring.

It must be held, therefore, that the defendant's barrels infringe, unless they can escape infringement by the modification shown through distorting the seam, so as to force it around a corner; that is, into the recess which Reynolds used for a different purpose. It is obvious that the forcing of the beaded seam around this corner— that is, into the smaller circumference—will, through the pressure of the machinery needed to force the seam into this recess, serve some of the purposes of tightening the seam, of reducing the diameter, and of thus fastening on the chime ring in the manner presented by Reynolds. It is obvious that the addition of the ring of the Booth range boiler patent to the Reynolds patent, if applied in the way taught by Young, would present the defendant's structure.

It may be argued that the strain caused by pressing the seam into the recess is a detriment rather than an advantage. But this would be a matter for commercial competition, as the idea of patentable novelty would not be disposed of by the relative advantages presented by the different results. It may also be assumed that the defendant's barrel, if it involves the principles of the patent in suit, but with an added feature obtained through the use of the Reynolds recess, could be patentable even as an improvement over Young. But the

question whether the defendant's present form of barrel escapes infringement is much more difficult.

The defendant uses what are called one-time shippers; that is, barrels without a chime ring, and made, generally, like the old Scaife keg. The testimony shows that these barrels will meet the interstate commerce test, of sustaining an internal pressure amounting to 15 pounds to the square inch and of being dropped, when filled, from a height of 5 feet, so as to fall directly upon the edge of the barrel, without bursting or opening the seam. But these barrels without a chime ring do not enter into the issues in this case, and do not carry us, upon the question of infringement, beyond the point that a rolled-up seam may be made water and pressure tight, to a certain limited extent, is old in the art, and is the particular seam which the defendant uses in connection with the chime ring to make the barrel complained of.

There seems to be no reason for holding that the Young patent is not valid. Its claims are not anticipated by any of the patents of the prior art, nor are they so broad in their terms as to bring in an unpatentable application of the old ideas which have been discussed. The defendant, however, contends that if the plaintiff seeks to broaden its patent, so as to include the Reynolds recess, it is then abandoning the patentable ideas of the Young claims, and is seeking to cover an old form of device, open to the world since the expiration of the Reynolds patent.

With this the court cannot agree. The issue in the case is not whether the Young patent would be rendered invalid, if it covers the defendant's structure. The issue is rather whether the defendant can escape the charge of infringement by neutralizing or counteracting its use of the Young patent through the immediate application of the old idea of the Reynolds patent, so that the defendant is either improving on the Young patent, or rendering the parts of the device in which it seems to infringe the Young patent merely immaterial features in its structure. The Reynolds patent is open to the defendant, and the defendant could undoubtedly manufacture barrels by making a folded seam and then attaching a chime hoop or ring like Reynolds, which would force the seam around a shoulder, and then shut down upon the shoulder. But it does not do this. It merely presents a shoulder in the chime ring, about which it forms the seam and additional shoulder of the Young patent. If the defendant should fold up a seam, and then force it into the recess of the Reynolds ring, by the mere clamping down upon the shoulder of the flange, the effect would be to unroll or to strain open the seam.

The plaintiff contends that the defendant does in fact strain or distort the metal in making its barrels by this very tendency to lengthen the parts; that is, to unroll the seam, when using the additional shoulder in the main portion of the chime ring. But the defendant seeks to avoid this, and to obtain the rolling up or tightening effect of the Young patent, by merely bending over the flange of the chime ring, around the seam, so as to roll up this seam against the shoulder of the chime ring, and at the same time to form the shoulder of the seam, which shall be wrapped into the surrounding or protecting metal of the flange.

[2] The addition of a well-known or unnecessary step will not enable an infringer to escape the charge of infringement, even though that addition may be claimed as an improvement. The addition of immaterial steps, which may, or may not, be a detriment, but which do not change the mechanical equivalents of the elements in the claims of the patent in suit, and where no additional element is presented, will not enable the defendant to avoid the charge of infringement. If the defendant had desired to claim an improvement patent, he could have attempted to do so. If he desired to use the Reynolds ring, he should content himself with clamping the flange down upon the shoulder, instead of carrying it around the shoulder formed by the folded seam. The defendant is apparently obtaining all of the advantage presented by the use of the Young patent over Reynolds, and then is seeking to avoid the charge of infringement by inserting the additional step of the shoulder or recess in the chime ring which the plaintiff claims makes his barrels commercially less valuable, and which is evidently borrowed from the prior art, but which does not make the defendant's barrel either a Reynolds barrel or a prior art barrel, as distinguished from one made so as to embody the Young patent.

It is evident that the defendant does not infringe claim 2 of the Young patent, which specifies five thicknesses of metal, any more than this claim is used by the plaintiff in its own commercial form. A decree will therefore be entered, holding the Young patent the property of the plaintiff company, and holding its claims valid.

The decree will further provide that claim 2 is not infringed, but that claims 1 and 3 are infringed by the form of barrel placed upon the market by the defendant, and shown on this trial by the exhibits called "Defendant's Barrel A," "Defendant's Barrel B," and "Defendant's Toch Barrel."