MEURER STEEL BARREL CO., Inc., v. DRAPER MFG. CO.

(District Court, N. D. Ohio, E. D. August 14, 1919.)

No. 437.

1. PATENTS ☜327—INFRINGEMENT—FOLLOWING DECISION OF OTHER DISTRICT COURT—COMITY.

In the absence of clear conviction that the decision was wrong, and the record being essentially the same, under the rule of comity, a prior carefully considered decision of another federal District Court, after full trial, in another suit, for infringement of the same patent, should be followed; there having been no appeal, and other alleged infringers having on advice acquiesced therein.

2. PATENTS ☜328—INVENTION—FLUID-TIGHT METAL BARREL JOINT.

The Young patent, No. 891,895, for securing by a malleable iron clamping ring the heads in metal barrels to form fluid-tight receptacles, *held* valid, against the defense of lack of novelty and invention, in view of the prior art.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PATENTS ⊂⊃26(1)—INVENTION—COMBINATION.

    A combination of old elements, which produced an old result in a new and cheaper way, embodies patentable invention.

4. PATENTS ⊂⊃36—INVENTION—COMMERCIAL SUCCESS.

    If the question of invention be doubtful, the balance will be turned in favor of patentability by a showing of undoubted commercial success.

5. PATENTS ⊂⊃312(1)—INFRINGEMENT—PRESUMPTION—GRANT OF LATER PATENT.

    Any presumption of noninfringement of plaintiff's patent because of the grant to defendant of a later patent, both being specific patents for a combination of elements in precisely the same art, *held* nullified by the fact that defendant's barrel, as manufactured and sold commercially, departed from his patent.

6. PATENTS ⊂⊃328—CONSTRUCTION—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

    The Young patent, No. 891,895, for so joining the heads and bodies of steel barrels by a shoulder as to form a fluid-tight joint, *held* not limited to a shoulder bent at an abrupt angle, notwithstanding words inserted in claim 1, after another claim without them had been rejected; the addition of words being merely to distinguish between the Young construction, with a shoulder, and that under prior patents, which did not have a joint, or at least not one in the form of a shoulder.

7. PATENTS ⊂⊃328—INFRINGEMENT—FLUID-TIGHT METAL BARREL JOINT.

    The Young patent, No. 891,895, for joining the heads and bodies of steel barrels by a shoulder to form a fluid-tight joint, *held* valid and infringed.

In Equity. Suit by the Meurer Steel Barrel Company, Incorporated, against the Draper Manufacturing Company. Decree for complainant.

Emery, Booth, Janney & Varney, of New York City, for plaintiff.
Albert Lynn Lawrence, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. Complainant's bill charges infringement by defendant of United States letters patent No. 891,-895, issued June 30, 1908, to Frank E. Young, on an application dated April 27, 1907. This patent was assigned by Young to the Brooklyn Range Boiler Company, a New York corporation, and later, in 1913, the complainant corporation was organized, and succeeded to the title and interest therein of the Brooklyn Range Boiler Company. Complainant's title or its corporate existence is not in dispute. The defenses are that complainant's patent, in view of the prior art, is invalid for lack of novelty and lack of invention, and that, if the claims of complainant's patent are properly limited and construed, defendant's construction does not infringe.

This patent relates to metal or steel barrels, or similar receptacles, in which the heads, formed separately from the body, are secured to the latter in such a manner that a fluid-tight receptacle is provided, and this result, it is contended, is accomplished in an improved manner in complainant's patent by means of a malleable iron clamping ring.

This patent was under consideration in the District Court, Eastern Division of New York, and on April 12, 1917, District Judge Chat-

field, by whom the case was heard, rendered a decision (Meurer Steel Barrel Co. v. National Enameling & Stamping Co., 242 Fed. 273), in which he held complainant's patent valid and infringed. An examination thereof shows that the prior art relied on to show lack of novelty or invention, and to limit the scope of the claims of the patent, was that which is now before me relied upon, with the following exceptions: The Cope (British) patent, No. 2,429, issued in 1860; Brown patent, No. 636,752, issued in 1899; McSherry patent, No. 690,312, issued in 1901; Stollberg patent, No. 880,834, issued in 1908, and the second Reynolds patent, No. 881,951 issued in 1908. The Hardie patent, No. 814,375, issued March 6, 1906, cited in the Patent Office against Young's application, was said by Judge Chatfield not to have been shown in the record before him. The issues, therefore, of lack of novelty and lack of invention, differ in the instant case in no substantial respects. The prior art, in my opinion, adds nothing of material value to the prior art then under consideration; indeed, the most pertinent prior art patents are those cited in the Patent Office against the Young application, and if complainant's patent is not invalidated thereby a different conclusion is not called for by the additional prior art introduced in the former case or in the instant case. For instance, the McSherry patent is similar to Booth, No. 516,073, and Reynolds, No. 621,540, both of which were cited in the Patent Office and considered in the former case. The Cope and Stollberg patents are even less pertinent than either Booth or Reynolds.

[1] In view of this situation, complainant invokes the doctrine of comity between courts of equal dignity in different jurisdictions, and, while this court is not asked to abdicate its own judgment, it is urged that in the interest of uniformity of ruling, and in order to avoid confusion, prior carefully considered decisions should be adhered to until some higher court reaches a different conclusion.

The force of this rule is well stated by Mr. Justice Brown in Mast, Foos & Co. v. Stover Manufacturing Co., 177 U. S. 485, 488, 20 Sup. Ct. 708, 44 L. Ed. 856. It is said in substance, that comity is not a rule of law, but one of practice, convenience, and expediency, and has substantial value in securing uniformity of decision and discouraging repeated litigation of the same question. Its obligation is not imperative; if it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle. Comity recognizes the fact that the primary duty of every court is to dispose of cases according to the law and facts; in other words, decide them right, and in so doing the judge is bound to determine them according to his own convictions. If his convictions be clear, he should follow them; but where, in his own mind, there may be a doubt as to the soundness of his views, comity comes into play, and suggests a uniformity of ruling to avoid confusion until a higher court has settled the law. The strength of this rule increases in proportion to the number of courts which have passed upon the question, and when it appears that the prior judgment fol-

lows a final hearing upon pleadings and proofs, and after a protracted litigation, and is the result of careful and painstaking consideration, greater weight should be given it. See, also, Macbeth v. Gillinder (C. C.) 54 Fed. 169; Beach v. Hobbs (C. C.) 82 Fed. 916; Penfield v. Potts (C. C. A. 6) 126 Fed. 475, 61 C. C. A. 371; Doelger v. German-American Filter Co., 204 Fed. 274, 122 C. C. A. 472; Cincinnati Butchers' Supply Co. v. Walker, 230 Fed. 453, 144 C. C. A. 595.

The situation now before me is one justifying, if not requiring the application of those principles of comity, unless my conviction is clear that Judge Chatfield's decision was wrong. It was made on a final hearing, upon pleadings and proofs, and after protracted litigation, in which the defendant was represented by able counsel. The record was in all essential respects the same before him as it is before me, and his opinion contains internal evidence that he gave to his judgment the most careful and painstaking consideration. In addition thereto it now appears that after his decision the defendant withdrew its appeal, agreeing to pay substantial damages for past infringement, and entered into a substantial royalty agreement; that later another suit was brought against the Whitaker-Glessner Company, in which, under advice of counsel, the defendant refrained from making a defense, paid substantial damages for past infringement, and entered into a substantial royalty agreement; and that still later the S. F. K. Company, also without waiting to be sued, paid substantial damages for past infringement, and entered into a substantial royalty agreement.

[2] In my opinion, while the references cited in the prior art are close, and the differences between them and complainant's patent are not great, there is still sufficient difference and advance over the art there shown to sustain its validity against the defense of lack of novelty and lack of invention. This prior art has been so ably and fully reviewed by Judge Chatfield that I do not deem it necessary to review it. I concur in his summing up of it as expressed in the following paragraphs:

"Young created the shoulder, which he recognized was necessary, by rolling up the side of the barrel and folding around this the flange of the head, so as to make the beaded rim and the interlocking seam shown in the tin receptacles of the prior art. He thus produced a seam which, when made of malleable sheet iron, would of itself be strong enough to resist ordinary strains, and might be water-tight. In other words, he then had the seam of the Byrnes anti-rust vessel and that of the Scaife coal oil barrel, but with a slightly different form of fold in the beading. No novelty was presented by the mere form of the fold. But in his claims he describes different thicknesses of metal forming this fold, as different embodiments of his way of creating the shoulder which, as has been said, he recognized must be present if the chime ring was either to be locked on or to furnish any clamping effect with respect to the seam itself. He secured this clamping effect, and locked the chime ring on, by carrying over the outstanding flange, and forcing it around the beaded seam, and then bending it sharply in against the side of the barrel. He then had the old idea of the beaded rim, which was capable of being compressed, when made out of malleable metal, into a water-tight joint. He used the old idea of a shoulder, which, by the interposition of a ring of larger circumference, would prevent the straightening out of the metal flange or seam after it had been drawn into the smaller diameter. He reinforced the resistance to the stripping off of the metal which formed the smaller ring, and absolutely

prevented the pulling out or opening of the folds (which constituted the seam as well as the shoulder), by locking them up inside the chime ring, which was the adaptation of another old idea, but which was applied to new uses.

"Young thus secured, also, the protecting or armor feature of the Booth, Trust, Barrath, and Reynolds patents, as a part of the mechanical or physical conditions resulting from forming a water-tight seam under the application of that force which was used to bend around and into the clamping position the projecting flange of the chime ring. He pointed out in his specifications and in his discussion with the Patent Office the differences between his application and the Reynolds patent. In so doing he assumed the lack of patentability in the old ideas of the prior art. He distinguished his patent from Reynolds, in that the presence of a shoulder, upon which to clamp down his ring and the flanges of the side and head of the barrel, was not required within the chime ring itself. He pointed out the desirability of being able to roll up the beaded seam, and form the shoulder for the clamping purpose, outside of the chime ring. He shows the economic advantage of rolling up this beaded seam as the chime ring is folded around. Thus he produces a tighter joint than if the seam were not rolled up within the flange; and he also pointed out the freedom from distortion or dangerous strain which would be presented if a previously rolled-up beaded rim were bent back and compressed into a recess, as would be the result if one sought to use the Reynolds chime ring upon a beaded seam like those of the prior art."

Some criticisms are made by defendant's counsel of this opinion to which a few words should be devoted. The learned judge does not accord the Le Febvre patent a place in the prior art, and defendant has produced evidence tending to show its effective date of publication as being prior to the filing date of Young's application. Complainant, on the other hand, has produced evidence, which, it is contended, shows Young's actual date of invention to have been earlier than the publication date thus relied on. Mr. Young having died shortly before this case was heard, this evidence of prior invention date rests upon the testimony of Henry Reynolds, the patentee of the two Reynolds patents referred to in the prior art, and of Mr. Meurer, president of the Brooklyn Range Boiler Company, at the time Young is said to have made his invention, supported by certain confirmatory records and entries in bookkeeping accounts. I find from this evidence that Young's date of invention is as contended for by complainant, and I also agree with Judge Chatfield's conclusion that, granting the Le Febvre patent a place in the prior art, it would not strengthen the case of anticipation as made by Reynolds, Booth, and other prior patents.

Criticism is also made that Judge Chatfield misapprehended the chime joint invented by Young, as disclosed by his patent application, in that he says (242 Fed. 275) that Young carried the flange of the head far enough around so that it not only entered into the formation of the shoulder, but was bent under the folded parts of the side of the barrel to tighten the seam. Further (242 Fed. 280) he says that Young folded around this and bent over parts of the body in the flange of the head, so as to make the beaded rim and the interlocking seam shown in the tin receptacles of the prior art, and that he thus produced a seam which, if made of malleable sheet iron, would of itself be strong enough to resist ordinary strains and might be watertight. This method of forming the chime joint and the function to be performed by the method of forming the joint are not, it is true,

disclosed in Young's specification, and to this extent the above statements are, perhaps, inaccurate. These errors, if such they be, do not modify the essential correctness of this analysis of the prior art. No novelty resides in the exact form of making the seam or chime joint, and neither in the Patent Office nor on the former trial was any element of novelty claimed or disclaimed by reason thereof. The invention in this aspect consists in forming a seam or chime joint by bending or folding the body and head together, so as to create a shoulder of certain thicknesses of metal. This result, and not the manner of forming the shoulder, was the material element. This conclusion is supported by the Patent Office proceeding. The examiner cited against Young's application Scaife, No. 6,391, as embodying a similar type of seam or chime joint; but Scaife shows a double or locked joint or seam, rather than the exact form of seam or joint disclosed by Young's specification. The distinction between Young's invention and the prior art was made upon grounds other than the form of seam, and the patent was allowed upon grounds other than the specific manner shown of forming the seam or chime joint.

[3, 4] Young's patent is of that class known as specific, as distinguished from generic. It is specific with respect to the prior art, and also with respect to defendant's construction. Young made his invention in a crowded art, and, as noted by the patent examiner, the references cited against his application are close. Many persons were then, and had been previously, working along the same or different lines in the same field. He is entitled to his specific construction, and not to any broad range of equivalents. All the elements of Young's combination, it may be, are old; but his combination of them is new, and is not anticipated by any of the devices of the prior art. The results thereby accomplished may also be old, and were accomplished in Reynolds, No. 621,540; but Young accomplishes them in a new, different, and substantially better and cheaper manner. Reynolds' steel barrel is the only device of the prior art which it is shown had any commercial success, yet its success, as compared with the success of the Young type of barrel, has been small. Upon legal principles so familiar as not to require the citation of authority, a combination of old elements, which produces an old result in a new and substantially better and cheaper way, embodies patentable invention. And also on like familiar principles, if the question of invention be doubtful, the balance will be turned in favor of patentability by a showing of undoubted commercial success. This showing in favor of Young's type of steel barrel is made clear by the evidence. The Reynolds barrel has been on the market many years, and the patent covering the same expired some years ago; but of the heavy steel barrels or containers, now much used and widely sold, only 5 per cent. is of the Reynolds type, as against 95 per cent. of the Young type. My conclusion, therefore, is that Young's patent is valid as to the specific construction embodied therein, and that the complainant is entitled to be protected against any infringement thereof.

Defendant strongly contends that, if complainant's patent is valid,

its claims must be so limited that defendant's construction does not infringe. The structure considered in the former case was sought to be distinguished upon the same grounds without success, and the same rule of comity, already invoked and allowed, should be properly applied as to the respects in which defendant's construction resembles that there held to infringe.

[5] A new feature, however, exists in this case. Defendant is the owner of United States letters patent, No. 1,125,011, issued to Charles T. Draper, January 12, 1915, and by him assigned to the defendant. The contention is that defendant's barrel is made in conformity to these letters patent.

Complainant urges that no presumption of nonfringement arises, even if defendant's barrel is manufactured under and in conformity to this patent, and cites Walker on Patents (5th Ed.) § 362a, and Herman v. Youngstown Car Manufacturing Co. (C. C. A. 6) 191 Fed. 579, 584, 112 C. C. A. 185. If the Draper patent were for an improvement upon the construction covered by the Young patent, or if the invention embodied in the Young patent were generic, and entitled to a broad range of equivalents, undoubtedly no presumption of noninfringement follows from the issue of the letters patent, whatever may be inferred from such issue of the existence of patentable differences.

As already stated, the Young patent is specific, and entitled only to a narrow range of equivalents. The Draper patent is not for an improvement upon the Young invention. Both are specific patents for a combination of elements in precisely the same art. If, therefore, the defendant's barrel was made in strict conformity to the Draper patent, the presumption of patentable differences resulting from the issue of the patent might carry with it a presumption of noninfringement; but I am of opinion that defendant's barrel, as manufactured and sold commercially, so far departs from the Draper patent as to nullify any presumption from the allowance thereof.

Draper's application recites that steel barrels, as previously constructed, have been provided with reinforcing members; but these prior structures have depended upon the maintenance of the annular joints at the heads, by the closeness of engagement of the reinforcing chime with said annular joints. Certain disadvantages in this type of construction, and also in the annular rolling ribs or elevations about the body of the barrel, are then pointed out. To overcome the disadvantages first mentioned, the applicant says he has sought to remedy these defects first, by making a liquid-tight, double-locked joint between the head and barrel body, independently of the reinforcing means; and, second, that he has provided a peculiarly shaped reinforcing chime, having a protective overturned lip for the joint, and frusto-conical walls extending within the head, wherein said chime is seated by shaping said head and barrel body thereto.

There are cited against this application both the Young and Reynolds patents. These citations, particularly Young's, are distinguished by the applicant on the ground that Young does not show a double-locked joint and that his protective ring is straight-sided; further,

that Young secures his retaining function by overlapping the seam completely by the protective flange; further, that Young expressly omits the salient feature of claims 1 and 2 (Draper's application) in providing a cylindrical reinforcing rim; further, Draper's attorney says, "as for the use of 'frusto-conical' (which had been criticized by the examiner as an inapt term), the engaging walls of applicant's reinforcing rim actually conform to this geometrical shape, and it is the inward crimping of the body portion and closure members which affords the effective seal." He further states that this forms a permanent closure, and that the edges of the closure member are interiorly sealed within those of the body portion.

The application was passed for allowance on the basis of these distinctions as to the inwardly inclined or crimped or frusto-conical shape of the walls of reinforcing rim and of the head and body. The difference in the manner of forming the chime joint was not, in my opinion, a controlling consideration with the examiner. The valid distinction was found in the manner of closing or sealing the joint by the inward crimping of the body portion and closure members. The drawings and specifications did not show, and the applicant did not claim, that the overturned flange or lip of the protecting chime ring performed any function in forming the liquid-tight joint, but, indeed, just the reverse. It did not have the positive interlocking or clamping action of the Young patent, but rather relied on compression and frictional engagement, as in Hardier, No. 814,375, to keep it in place and to serve as a protecting armor.

Defendant's barrel in litigation departs widely from this specific construction. It does not have the inwardly inclined or frusto-conical shape, either of head or body, or of chime ring. On the contrary, the wall of the head and body are almost in a direct plane with the barrel body. The departure from a true plane is scarcely perceptible to the naked eye. The same is true of the inner wall of the reinforcing chime ring. This ring is straight-sided and cylindrical, and does not possess the salient features of claims 1 and 2 of the application. Its protective flange overlaps the shoulder of the chime joint in such a way as to produce the positive interlocking and clamping action of the Young patent. The free end of the chime ring flange, it is true, in Young's invention, is bent around the shoulder of the chime joint at an abrupt angle, and brought into contact with the barrel body, while in defendant's it overlaps the shoulder to a much less extent and does not contact with the barrel body. Something is claimed for this difference. One advantage, it is said, is that this open space between the flange end and the barrel body leaves exposed the chime joint, so that if a leak occurs the place of leakage may readily be discovered and remedied. This may be admitted; but it is also true that the free end of the flange overlaps the chime joint shoulder sufficiently to produce the positive interlocking and clamping action of Young's invention.

Defendant's expert sought to obviate this effect by asserting that the overlapping of the flange was sufficient only to anchor the chime ring; that it did not perform any funtion in making the liquid-tight.

260 F.—27

double-locked joint; and that it could be easily removed with a hammer and restored without injuring the chime joint. I do not, agree to these contentions. An inspection of defendant's structure, exhibited in various forms, convinces me, as it must convince any one, that this reinforcing chime ring has the positive interlocking and clamping action of complainant's structure, even though the flange end is not bent at an abrupt angle around the shoulder of the chime joint and does not contact with the body barrel. It cannot be removed without great force or without distortion.

[6] Defendant strenuously urges that the file wrapper history of Young's patent shows that the manner of forming the joint or shoulder, as therein disclosed, and that the bending at an abrupt angle of the free end of the chime ring flange about the shoulder of the chime joint, are positive limitations upon defendant's patent. The last-mentioned feature of bending at an abrupt angle was inserted after a claim without it was rejected. In support of this contention the familiar principle is invoked that if an applicant, in order to get his patent, accepts one with a narrower claim than that contained in his original application, he is bound by it, and is estopped from claiming a broader construction. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723; Hubbell v. United States, 179 U. S. 77–83, 21 Sup. Ct. 24, 45 L. Ed. 95; Vanmanen v. Leonard, 248 Fed. 939, 161 C. C. A. 57.

An examination of the Patent Office proceedings convinces me that these contentions cannot be sustained in this broad manner. As to the form of the chime joint or shoulder, enough has already been said to indicate my opinion. In brief, the forming or creation of a shoulder, and not the method of forming the joint, was the essential feature. As to the abrupt angle at which is bent the free end of the reinforcing ring, it would, in my opinion, be an unreasonably narrow interpretation to hold that the specific angle of the bending is an essential element, or that Young is so limited. Reynolds, No. 621,540, and Hardie, No. 814,375, had both been cited against Young's application, and the examiner had in the first instance rejected the application in large part because of them. Reynolds, however, did not show or claim a seam or shoulder in any form, much less one made by folding or bending the head or body upon each other. This was a form of construction in the prior art which Young sought to distinguish. Hardie showed a joint, not, however, in the form of a shoulder, but one with the metal of the body bent upon itself, and the metal of the head section bent around it, and also a reinforcing chime ring applied thereto depending upon compression and frictional engagement, and not upon interlocking action to keep it in position.

This was a form of construction which Young sought to distinguish. This and other references were, in the language of the patent examiner, close, and it was necessary that the differences between them and Young's construction should be made distinct. Additions made in Young's claim 1, as compared with canceled claim 6, much relied on by counsel, were made to bring out these distinctions. The pre-

vious rejection, and the addition of plain language to bring out these distinctions, are not to be regarded as an acceptance of claims limited to this specific form of construction. Young's invention, as finally allowed, consisted of a seam or shoulder of certain thicknesses of metal, formed by bending or folding together the edges of the head and body members and a reinforcing chime ring, with a flange so bent around and overlapping the shoulder as to positively lock and clamp it together, thereby producing a fluid-tight joint. His claims as finally allowed are no narrower than this construction.

[7] Defendant produces a fluid-tight joint independently of the positive interlocking action of the reinforcing ring, but in so doing it produces a chime joint or shoulder of the same thickness of metal as is covered by Young's patent claims. Defendant also uses a reinforcing chime ring with the flange bent around and overlapping that shoulder, so as to positively interlock and clamp the joint together, just as is done in Young's invention. There is identity of function and substantial identity in the way of performing the function. It follows that defendant's commercial barrel with this form of reinforcing ring is an infringement of complainant's patent, and it is none the less an infringement because the free end of the flange is not bent at an angle as abrupt, nor overlapped to an extent as great, as that of Young's invention. Whether or not a construction strictly in conformity to Draper's patent would be an infringement is not involved, and no opinion with respect thereto is expressed.

My conclusion is that complainant's patent and all its claims are valid and infringed. The usual decree for an injunction and an accounting will be entered, with the following modification: On this hearing it was disclosed that a substantial part, perhaps 50 per cent., of defendant's product is being supplied on a contract to the United States War Department, with the performance of which complainant disclaims any desire to interfere. The injunction order will be so framed as to permit the further and complete performance of this contract. If the parties are unable to agree upon the conditions and form thereof, both may submit drafts of a suitable order, and, if necessary, an informal hearing will be accorded.