DEISTER CONCENTRATOR CO. v. DEISTER MACH. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   January 2, 1917.   Rehearing Denied February 13, 1917.)

No. 2319.

PATENTS ⏥328—VALIDITY AND INFRINGEMENT—ORE-CONCENTRATING TABLE.
   The Overstrom patent, No. 763,784, for an ore-concentrating table, is for an improvement at most, and, conceding its validity, must be strictly construed, and limited to the construction shown. As so construed, *held* not infringed.

Appeal from the District Court of the United States for the District of Indiana.

Suit in equity by the Deister Concentrator Company against the Deister Machine Company, Emil Deister, president, and William F. Deister, vice president. Decree for defendants, and complainant appeals. Affirmed.

Robert S. Taylor, of Ft. Wayne, Ind., for appellant.

Darwin S. Wolcott, of Pittsburgh, Pa., and Edward G. Hoffman, of Ft. Wayne, Ind., for appellees.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. This is an appeal from a decree dismissing a bill for infringement of claims 7, 8, and 9 of patent No. 763,784, issued to Gustave A. Overstrom, for an ore-concentrating table. Claim 7, which is typical of the others, reads as follows:

A concentrating-table having riffles upon the upper surface thereof, a covering or lining interposed between the riffles and table, and a wedge block interposed between said table and covering to form an upwardly inclined surface at the mineral delivery end of the table, and means for reciprocating the table in the direction of the length of said riffles, as and for the purpose set forth.

The alleged infringement consists in the sale of concentrators constructed as shown in the drawings of patent to William F. Deister, No. 1,088,685, and described in the specifications thereof, and in the construction of plateaus, as shown in Figures 6 and 7 of the Deister patent, upon the decks of pre-existing concentrating tables, especially those made under the Wilfley patent No. 590,675. The following drawings from the several patents will give a clearer understanding of the contentions:

⏥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DEISTER.

FIG.4.

FIG.6.

OVERSTROM.

FIG.7.

The art is old; each patent takes it at best but a step forward. As a whole, these ore concentrators mark a great advance in the art of ore dressing, and through them large quantities of mineral are redeemed, which theretofore had been abandoned, because the mass in which they are found is too poor in metal to go to the smelter. Certain common features are to be found in nearly all of these devices. The mass is ground into a pulp before being fed to the concentrator. Linoleum, because it has an attraction for sulphides, is used as a surface or deck covering. Strips of wood or metal, called riffles, arranged in various combinations, are usually fastened upon the deck. These serve to catch the particles of mineral in the pulp, because the mineral, on account of its greater specific density, gravitates to the bottom, while the silica, rock, and other waste material flow on over the riffles. But the most important feature of these concentrating tables is what is known as the reciprocating movement. This is a form of rapid oscillation, which, when suddenly arrested, causes the mineral matter in the pulp, by the force of its own momentum or inertia, to be carried toward one end of the table. The gangue, being much lighter, develops no such momentum, and, being on the upper surface of the pulp, is driven by the side wash or on-coming pulp to a different end of the table.

On the Overstrom table, the crushed ore is deposited on the triangular space $K$ at the upper left-hand corner. Wash water, supplied by a perforated pipe extending from $C$ to $D$ flows transversely across the riffles, and the pulp tends to flow in the same direction. The mineral particles, however, being heavier than the gangue, sink into the troughs between the riffles, and are driven by the reciprocating movement toward the mineral discharge side $DF$, while the waste material is swept along over the riffles towards the tailing discharge $EF$. According to the drawings and specifications in claims not here in issue, the successive riffles diminish in height from left to right to a point $L$ (Fig. 3). From $L$ to $M$ the height of each riffle remains substantially the same so that the lines $HF$ and $JG$ (Fig. 1) represent parallel surfaces. The purpose of this arrangement, as Overstrom states in his specification, is to secure a complete and efficient concentration of the mineral and the elimination of the gangue; the riffles, while providing a ledge to retain the mineral, being sufficiently low, so as not to retard the movement of the sand, rock, and other waste material. But from the point $M$ each riffle increases in height, in order to insure against any mineral particle being washed over the tailings discharge.

In order to insure still further this separation of the mineral from the gangue, and to prevent too much water flowing over the mineral discharge, the surface of the table adjacent to that edge is gradually raised. This upwardly inclined raise is effected by the interposition between the deck of the table and the linoleum cover of a tapering wedge block, triangular in shape occupying the space $JDG$ in Figure 1. The wedge may also be seen at $N$ in Figure 3 and $A'$ in Figure 6. Because the silica, rock, water, and the like are lighter than the mineral, it is claimed that they will not travel up the inclined surface, but that the momentum of the mineral under the impetus of the reciprocations of the table will cause the mineral to travel up the in-

cline and over the mineral discharge. Overstrom suggests that the riffles at this end be reduced in height, as shown in Figure 6, to compensate for the wedge block; but there is no suggestion or claim that this arrangement of the riffles on the wedge block constitutes a distinctive feature of the invention.

The Deister duplex plateaus, which it is alleged infringe the Overstrom patent, are constructed on both the Deister and the Wilfley table. On the Deister table, the crushed ore is delivered through the launder 1 upon the upper right-hand corner of the deck. As the pulp moves down the table, the mineral under the influence of the reciprocal movement moves transversely of the direction of the flow of the pulp and towards the mineral discharge edge. Riffles extend from the front to the rear end, so as to catch the mineral particles as they settle upon the deck and guide them toward the mineral discharge. As they move towards the mineral discharge edge of the table, the mineral particles, still under the influence of the differential movement, are driven up the inclined surface 4 (Fig. 4), across the level surface of plateau 3, up a second beveled surface 7, and across a second plateau 6, which is parallel to the first plateau and the main or stratifying surface. The beveled or inclined surfaces 4 and 7 have a width of about 4 inches in the direction of the motion. The first plateau has a width of about 8 inches, and the second plateau has a width of 5 inches at one end and 8 inches at the other. The first plateau is about one-fourth inch above the main surface and about the same distance below the second plateau. Though the plateaus and inclines might be, and some now are, made an integral part of the deck, it is customary to make them by the use of blocks and wedges inserted between the linoleum and the deck. The function performed by the inclines is the same as that performed by the incline on the Overstrom table; that is to form an obstruction over which the gangue cannot readily pass, but over which the mineral particles, propelled by the differential motion, easily climb. The plateaus furnish smooth, level surfaces for a thorough washing of the ore and a final complete separation of the ore and the sand; for, as appellees say, when the mineral stratifies and separates from the gangue, there is always a certain amount of sand that adheres to the minerals, that can only be got rid of by spreading the particles on a smooth, level surface and letting the dressing water wash the sand away, while the reciprocating movement drives the clean metal into the mineral discharge. Launders arranged in line with the plateaus furnish water for this final dressing.

The Deister duplex plateau, built upon the Wilfley deck, operates in substantially the same way and upon the same principle as those built upon the Deister table. Owing to the shape of the Wilfley deck, however, the final plateau is triangular in shape, so that the second incline, while it is not along the mineral discharge end, touches the edge thereof at a single point. Because these inclines and plateaus, applied either upon the Deister or Wilfley tables, are commonly constructed, not as an integral part of the deck, but by the insertion of wedges and blocks between the deck of the table and the linoleum, it is urged that the Overstrom patent is infringed.

Concededly, a wedge inclining upward to the edge of the mineral

discharge end, forming, not a separable, but an integral, part of the table, would not infringe. The state of the art and the proceedings in the Patent Office compelled this concession. For the same reasons, if these claims, which, it must be noted, are not based upon any peculiar arrangement of the riffles, or upon any novel element in the combination, can in any event be deemed valid, their scope must be restricted to the device as therein described. The inventor, in canceling the rejected broader claims, stated that he had withdrawn these claims—

"in order to specify more restrictively the feature of the upwardly inclined surface and the means for producing it, at the mineral discharge end of the table."

While a mere change in the location of elements will ordinarily be disregarded, when the same function is performed in the same way and with the same result, yet when, as in this case, a specific location is claimed as essential to the conception, a change therefrom that is not a mere subterfuge will avert the charge of infringement.

Overstrom placed his inclined wedge at the very edge of the table, because of his belief that the separation of ore and sand would be completed thereon, and the mineral would pass over that edge free from sand. Deister used a combination wedge and block, with a plane surface adjacent to the mineral discharge end, because of his belief that, while some separation is effected on the incline, the flat surface is essential to the completion thereof. Deister did not thereby adopt Overstrom's invention and improve it, but, rejecting Overstrom's conception as erroneous, and his invention, embodying it, as worthless, found what he believed to be the right means of attaining the result at which both aimed.

The evidence justifies the conclusion that Deister was right, and Overstrom wrong; while some 300 Overstrom tables are in use, they do not adopt the wedge inclined to the very edge of the table, when as in some of them a wedge is used at all. Without expressly determining that the patent in suit is invalid, in view of the prior art, for lack of invention, the decree dismissing the bill for want of equity must be affirmed, inasmuch as there is no infringement.

Decree affirmed.