Booth, Chief Justice,
delivered the opinion:
This is a suit by the assignee of Letters Patent #891895 to recover from the Government under the provisions of the act of June 25, 1910 (36 Stat. 851, c. 423), as amended by the act of July 1, 1918 (40 Stat. 705, c. 114), for the unauthorized use of the patent involved. The acts noted above read as follows:
"That whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover reasonable compensation for such use by suit in the Court of Claims: Provided, however, That said Court of Claims shall not entertain a suit or reward compensation under the provisions of this act where the claim for compensation is based on the use by the United States of any article heretofore owned, leased, used by, or in the possession of the United States: Provided further, That in any such suit the United States may avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise: And provided further, That the benefits of this act shall not inure to any patentee, who, when he makes such claim is in the employment or service of the Government of the United States; or the assignee of any such patentee; nor shall this act apply to any device discovered or invented by such employee during the time of his employment or service.”
“The act entitled ‘An act to provide additional protection for the owners of patents of the United States, and for other purposes,’ approved June twenty-fifth, nineteen hundred and ten, shall be, and the same is hereby, amended to read as follows, namely:
“That whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner’s remedy shall be by suit against the *441 United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture: Provided, however, That said Court of Claims shall not entertain a suit or award compensation under the provisions of this act where the claim for compensation is based on the use or manufacture by or for the United States of any article heretofore owned, leased, used by, or in the possession of the United States: Provided further, That in any such suit the United States may avail itself of any and all defenses, general or special, that might be pleaded by a defendant in an .action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise: And provided further, That the benefits of this act shall not inure to any patentee who, when he makes such claim, is in the employment or service of the Government of the United States, or the assignee of any such patentee: nor shall this act apply to any device discovered or invented by such employee during the time of his employment or service.”
Frank E. Young was the original patentee in the case and to him Letters Patent #891895 were granted on June 30, 1908. On July 17, 1908, Young assigned his patent rights to the Brooklyn Range Boiler Company, and this corporation on August 11, 1915, assigned the patent to the Meurer Steel Barrel Company, Inc., the plaintiff herein.
The patent, as stated in the specifications, “relates to metal or steel barrels or similar receptacles in which the heads, formed separately from the body, are secured to the latter in such manner that a fluid-tight receptacle is provided, this being accomplished in an improved manner by means of a malleable iron clamping ring.” The patentee's conception extended to an improved method of so uniting the separate head of the barrel with the barrel itself and by means of an inflexible malleable iron clamping ring produce an air and fluid-tight joint without the employment of additional extraneous means. To accomplish the intended purpose the inventor utilized the existing structures in the art, and by taking the body of the barrel bent its outer edges upon itself a ■number of times in order to form a bead or shoulder as illustrated by Fig. 6 of the illustration set forth. Theseparate flanged head of the barrel was then inserted into the top and • ends thereof with its free edge bent over the above bead or shoulder to the desired length, preferably, as stated by the patentee, “so that its edge will be in proximity to the exposed *442 edge of the body bead.” Around this shouldered or beaded seam a clamping ring, Fig. 8, usually of malleable iron, was located in position, so compactly placed as to overlap the

flanged seam and engage the same tightly with the body of the barrel, Fig. 9. The malleable iron clamping ring was provided with a bendable locking flange, Fig. 10, which under *443 pressure was forced completely and intimately around the beaded seam or shoulder, Fig. 2, effectively locking together the parts described.
The record indisputably establishes that the clamping ring of the inventor accomplished its intended purpose, and did so without the use of solder or additional extraneous members. The patentee not only enabled a fluid and airtight barrel to come into existence in a manner of construction not theretofore resorted to, but he did so by the employment of means which in no way increased the cost of production, and in addition increased the inherent strength of the barrel, which in commercial usage must withstand great internal pressure and rough handling in the transportation of fluids. The use of steel barrels for the transportation and storage of fluids, inflammable and otherwise, was manifestly old. The adopted method of construction wherein the head of the barrel was formed separately from its body was likewise old. Flanging the head and beading the body upon itself was well known to the art, so that the field of invention open to inventors was limited in its scope to producing an air and fluid-tight joint in a manner to meet the necessities of the art, to bring forth a mechanical construction designed to serve the sought-after purpose and adapted to the wants and necessities of the trade. This we think the patentee undoubtedly did. We say this with a degree of confidence not always present in patent cases involving a limited patent, confined to the combination of elements old in the art in a new and novel way. The three claims of the patent, each of which the plaintiff alleges has been infringed by the Government, are as follows::
"1. A barrel or receptacle comprising a body and a head united by a fluid-tight, solderless joint, said body and head being bent one upon the other to form at least four thicknesses of metal thereby to form a shoulder made up of at least two thicknesses of metal, and an annular malleable clamping ring having a bendable locking flange overlapping said bent portions with its free end bent at an abrupt angle to such flange so as to overlap said shoulder thereby positively to lock said bent portions within the walls of said ring.
“2. A barrel or receptacle comprising a body and a flanged head united by a fluid-tight, solderless joint, said flange and head being bent one upon itself a plurality of times *444 and the other upon such bent portions to form five thicknesses of metal and thereby forming a shoulder made up of' three thicknesses of metal, and an annular malleable metal clamping ring having a bendable locking flange with its free end bent at an abrupt angle to such flange so as to overlap such. shoulder thereby positively to lock said bent portions-within the walls of said ring.
“3. A barrel or receptacle comprising a body and a flanged head united by a fluid-tight, solderless joint, said body having a part bent upon itself and said flange being bent around such bent portion of the body and forming therewith a shoulder located . exteriorly of the barrel, and a malleable metal clamping ring having a part thereof located interiorly of and in parallelism with the flanged head, and a bendable locking flange located exteriorly of and in parallelism with the bent portions of such head and body with its free end bent inwardly at an abrupt angle to such flange so as to overlap such shoulder thereby positively to lock said bent portions and body within the walls of said clamping ring.”
These claims have been many times before the courts- and the patent uniformly sustained as valid in repeated suits against infringers. The first case is found in 242 Fed. 273, and the decision therein determined the plaintiff’s rights as against the National Enameling Stamping Company, the-suit having been brought in the District Court for the Eastern District of New York. In the above case Judge-Chatfield in an exhaustive opinion distinguished the Young-invention from the prior art, went with minute care into the" details of construction and the progress of the patent through the Patent Office, clearly differentiated Young’s patent from prior and existing structures, and in the following language accorded it validity (pp. 280-281):
“Young created the shoulder, which he recognized was necessary, by rolling up the side of the barrel and folding around this the flange of the head, so as to make the beaded rim and the interlocking seam shown in the tin receptacles of the prior art. He thus produced a seam which, when made of malleable sheet iron, would of itself be strong enough to resist ordinary strains and might be water-tight. In other words, he then had the seam of the Byrnes anti-rust vessel and that of the Scaife coal oil barrel, but with a slightly different form of fold in the beading. No novelty was presented by the mere form of the fold. But in his claims he describes different thicknesses of metal forming this fold, as different embodiments of his way of creating the shoulder *445 which, as has been said, he recognized must be present if the chime ring was either to be locked on or to furnish any clamping effect with respect to the seam itself. He secured this clamping effect, and locked the chime ring on, by carrying-over the outstanding flange and forcing it around the beaded seam and then bending it sharply in against the side of the barrel. He then had the old idea of the beaded rim, which was capable of being compressed, when made out of malleable metal, into a water-tight joint. He used the old idea of a shoulder, which, by the interposition of a ring of larger circumference, would prevent the straightening out of the metal flange or seam, after it had been drawn into the smaller diameter. He reinforced the resistance to the stripping off of the metal which formed the smaller ring, and absolutely prevented the pulling out or opening of the folds (which constituted the seam as well as the shoulder), by locking them up inside the chime ring, which was the adaptation of another old idea, but which was applied to new uses.
“Young thus secured, also, the protecting or armor feature of the Booth, Trust, Barrath, and Reynolds patents, as a part of the mechanical or physical conditions resulting from forming a water-tight seam under the application of that force which was used to bend around and into the clamping position the projecting flange of the chime ring. He pointed out in his specifications and in his discussion with the Patent Office the differences between his application and the Reynolds patent. In so doing he assumed the lack of patent-ability in the old ideas of the prior art. He distinguished his patent from Reynolds, in that the presence of a shoulder, upon which to clamp down his ring and the flanges of the side and head of the barrel, was not required within the chime ring itself. He pointed out the desirability of being able to roll up the beaded seam, and form the shoulder for the clamping purpose, outside of the chime ring. He shows the economic advantage of rolling up this beaded seam as the chime ring is folded around. Thus he produces a tighter joint than if the seam were not rolled up within the flange; and he also pointed out the freedom from distortion or dangerous strain which would be presented if a previously rolled-up beaded rim were bent back and compressed into a recess, as would be the result if one sought to use the Reynolds chime ring upon a beaded seam like those of the prior art.”
A second suit was instituted by the plaintiff herein in the District Court for the Southern District of Ohio against the Whitaker-Glessner Company for infringement, and again the defendants therein, rather than hazard a final determina-
*446 tion, suffered a permanent injunction to issue against continuing infringement, and adjusted the controversy upon the basis of damages sustained by the plaintiff for past infringements. In 1917 the plaintiff brought suit against the Draper Manufacturing Company (260 Fed. 410) in the District Court for the Northern District of Ohio for infringement of the patent in suit, and Judge Westenhaver in a lengthy opinion reviewed the challenge to the soundness of Judge Chatfield’s opinion in 242 Fed. 273, reviewed the new and alleged existing prior art before him, and again held the Young patent valid and infringed. In this same year plaintiff brought suits against the Cleveland Steel Barrel Company and the Ohio Corrugating Company in the District Court for the Eastern District of Ohio. The two suits were combined, heard together, and resulted in a decree of validity and accounting for infringement, and thereafter upon appeal to the Circuit Court of Appeals for the Sixth Circuit the judgment of the district court was affirmed (268 Fed. 536).
The plaintiff's final suit was against the Boyle Manufacturing Company in the District Court for the Southern District of California, wherein Judge Lindley, in delivering his opinion, again discussed at length the merits of plaintiff’s invention and sustained the validity of his patent.
While the cases cited are not claimed as res adjudicóla, nevertheless the uniform course of judicial precedents firmly establish the rule that as between identical interests involving the identical patent upon similar testimony, the party defendant alone being different, the doctrine of stare decisis is given great weight. Obviously, as a logical legal principle, courts would necessarily approach a case such as this with commanding respect for a series of judicial opinions, exhaustive and complete, all of which declined to accede to the precise defense herein repeated and relied upon. In language peculiarly apropos the circuit court of appeals in Doelger v. German-American Filter Co., 204 Fed. 274, 276, said:
“Few patents have been so persistently attacked and so thoroughly tested in the courts. Every argument which can be urged against it was presented in the prior litigation and carefully considered. Nothing we can say will add to the unanimous conclusion reached by the courts which have preceded us. The doctrine of stare decisis applies. Though *447 the decisions of other courts are not conclusive upon us, an orderly administration of the law requires us to follow them when based upon substantially the same facts, unless we are clearly of a different opinion. Mast-Foos Co. v. Stover Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Beach v. Hobbs, 92 Fed. 146, 34 C. C. A. 248.”
To the same effect are the following cases: Crozier-Straub, Inc. v. Reiter, 34 Fed. (2d) 577; Westinghouse v. Stanley, 133 Fed. 167; Bassick Mfg. Co. v. United Grease Gun Corporation, 40 Fed. (2d) 549.
The defendant within undoubted rights (American Chain Co. v. Franklin New York Co. 34 Fed. (2d) 551) again challenges the validity of the plaintiff’s patent and predicates the defense upon prior art, mechanical skill, and new discoveries alleged to be positive proof of prior knowledge and prior user of a similar construction antedating plaintiff’s patent by more than two years. Technical errors of omission and commission are pointed out as existing in the prior cases cited, and it is apparent that the art has been searched with commendable industry by the defendant to the utmost limits. In the various cases adjudicated the prior art was exhibited to the courts covering a great number of previous patents, both foreign and domestic. The extensive and careful analysis of this art, the detail comment upon its differentiation from the patent in suit, exact, we think, no extended discussion in this opinion. All the court would be able to do would be no more than repetition. The Bruson patent #132895 was cited by the Patent Office when Young’s application was pending and was before the courts in the National, Draper, Cleveland, and Boyle suits. The Booth patent #516073, the Reynolds patents #621540 and #881951, the Hardie patent #814375, the Scaife patent #6391, the Kramer patent #889793, the Storer British patent #5590, the Walsh patent #225499, the Mauser barrels, and the Bates cans were all either before one or more of the courts in the adjudicated cases, and many of them cited by the Patent Office while Young’s application was pending. Nothing, we think, is to be gained by again discussing the detail and differentiating features with respect to the patent in suit and the prior art heretofore cited and relied upon as anticipatory in the adjudicated cases. Without difference of opinion the courts *448 uniformly held that each of the infringing devices employed “a malleable metal clamping ring having a part thereof located interiorly of and in parallelism with the flanged head, and a bendable locking flange located exteriorly of and in parallelism with the bent portions of such head and body with its free end bent inwardly at an abrupt angle to such flange so as to overlap such shoulder thereby positively to lock said bent portions and body within the walls of said clamping ring,” and we may add that each of the devices heretofore held to be infringing ones corresponds with remarkable similarity to the new alleged infringing devices, except as hereinafter noted, introduced in the case now for the first time. The patent to Walsh #260432 has never been before a court; it is new to litigation, and defendant relies upon it with much confidence. Walsh obtained two patents, one on March 16, 1880, identified as #225499, and an additional one, #260432, on July 4, 1882. The Walsh patent #225499 was before and considered by the court in the case of this plaintiff, Meurer Steel Barrel Co. v. National Enameling & Stamping Co., 242 Fed. 273, 278. In deciding its applicability as prior art the court said:
“Walsh used a thin sheet of metal, like the Byrnes antirust sheet, to act as a temporary or thin cover to a paint can or such receptacles, with the idea that this cover could be easily punctured or removed, and yet would render the vessels tight until their contents were desired. In order to secure this result, Walsh placed over the thin sheet of metal a ring for receiving the cover and with a projecting flange, which was bent around and tucked under the flange of the thin sheet, and also under the side of the can, thus fastening the side, the thin top, and the ring together in the bead or rim. Walsh thus made out of this tin beading a structure in which he had the side, the flange of the top, and the overlapping or projecting rim, which was bent around and tucked up into the seam in such a way as to bind the parts together sufficiently to meet the needs of a paint can, and to show the possibility of making a fluid-tight joint, under ordinary pressure, bj the rolling up of thin metal into a beaded seam. He may have contemplated the use of solder, if necessary. But he does not show a chime ring in the sense in which we find that idea used when we come to the Reynolds patent. Walsh merely makes use of the old ideas of the tucked-in seam and of folding flexible metallic sheets about other folds, to form a shoulder. He tucks in his outside sheet, so *449 that it is of itself made a part of the joint, instead of crimping it around, as was well known in the prior art. He thus makes his joint tight, and illustrates the possibilities of folding up the parts into a seam.”
Walsh’s problem, as disclosed from his specifications and claim, was the production of a fluid-tight joint in combination with a thin cover or lid capable of being readily and easily punctured; he undoubtedly resorted, as said by the court, to “use of the old ideas of the tucked-in seam and of folding flexible metallic sheets about other folds, to form a shoulder,” but he also encountered as a practicable proposition an inherent difficulty in the application of his construction to production, in that in the course of manufacture “the mandrel necessary to hold said cover in position during the operation of seaming is apt to depress the cover and draw it out of position, and thereby form an imperfect joint.” To correct this defect the patentee’s application.which resulted in the issue of patent #260432 of July 4, 1882, was especially directed. We say this because the specifications of this patent expressly state, “To obviate this objection I place over the fixed cover and the top of the body of the can a sheet-metal annular ring, D, and attach it and the fixed cover to the body of the can by means of seaming.” In other words, Walsh’s second patent, #260432, employs a new form of construction with respect to this annular ring by introducing a lateral projecting flange with the inner wall of the ring inclined or beveled, thereby escaping the possibility of the mandrel passing through the thin cover by causing it, the mandrel, to rest upon the flange of the ring. The annular ring of the Walsh patent was neither designed nor intended to produce a clamping effect; it functioned, as the plaintiff observes in the brief, as an armoring device, a protective element secured in position in the old way by a folding process of compressing together the various elements, i. e., the thin cover, the body of the can, and the annular ring, to form a shoulder. Young did not claim, nor could he, novelty in the formation of a shoulder. The courts in adjudicating his patent so decided. Walsh’s thin cover, susceptible to puncture with a knife blade, essentially exacted armoring from an additional element, and this fact, coupled with the hazards *450 of manufacture, directed his attention to that existing problem. Walsh’s fluid-tight seam was accomplished, in so far as the detail of construction ascertainable from the specifications is available, by the old process of folding together the various elements to produce a shoulder, and the subsequent introduction of the annular ring in a modified form was, in our opinion, a simple reinforcing or additional element to obviate the difficulties inherent in his first form of construction. This we think is manifest from the fact that in addition to the ring specified, the patentee employs a second or slip cover “C” engaged at right angles over the top and edges of the ring, clearly indicating that the ring itself functions only as an armoring or protective element, and that an auxiliary cover is essential to reinforce the seam, a functioning element devoid of the novel features of Young’s clamping ring, inside of which the old shoulder is effectively interlocked to form an air and fluid-tight seam, and the ring itself permanently and inflexibly interlocked to the body of the barrel. So far as we are able to discern, the analogy between the two Walsh patents as related to the art involved is established. The differentiating features do not extend to the predominating novel ideas of Young existing in his conception of an annular clamping ring, functioning as indicated in his specifications and claims.
It is obAdous from the record that the material employed by Walsh, i. e., tin plate, in the construction of his ring is wholly insufficient inherently to afford the requisite clamping effect secured by Young, as well as withstand the internal pressure and rough handling comprehended in the construction of steel barrels. One inventor was striving to overcome a problem foreign to and not within the conception of the other. One united elements old in the art to function in a stated way, and the other, resorting to the same source, brought into being a novel design functioning in an entirely different manner from his predecessor in the art and accomplishing an entirely different result when applied in the art.
As evidence of prior public use the defendant produces the Schweigert-Standard Oil structure. The exhibit offered is of a small cross-section alleged to have been discovered in 1906. The exhibit, in our opinion, fails of its intended purpose. *451 Finding XII accurately reflects the record. The defendant does not object to the finding, and we see no reason for entering upon a discussion with reference to the facts found. They are indisputably established.
The proof of prior public use, as well as the construction of the Schmalenbach-Peacock-Wehrhahn cans, is decidedly unsatisfactory. We are not of the opinion that the proof adduced is sufficient either in volume or accuracy to warrant a holding that these alleged potash cans or drums came into this country from Germany as early as 1898. Aside from this, however, the proof adduced, scant as it is, fully sustains the court’s Finding XIY, and extended comment is not required.
There can be no doubt that the Iron Clad Manufacturing Company manufactured and sold a vast number of coffee and teapots, as well as similar containers exhibited to the court in physical form and by way of illustration, prior to 1902. The defendant points out with accuracy the detail constructions of the formation of the head, or rather bottom, of the pots into a shoulder. The so-called “clamping ring,” into which the shoulder enters to form an interlocking seam, is, we think, devoid of any clamping function. The location of this ring around the double seam of the pots was obviously so placed without regard to its functioning to bring forth a fluid-tight seam; as a matter of proven fact, the pots were as effectively fluid-tight without the ring. One of the exhibits in evidence discloses portions of the ring completely worn out and the folded seam intact as originally made. We are un.able to perceive wherein the so-called annular ring bears any relationship to the procurement of a fluid-tight joint. It is, in our opinion, an auxiliary reinforcing element functioning more in the nature of an armoring or protective device, securing to the primary parts additional protection against the common usage to which they were to be subjected. Young’s clamping ring is restricted to a form of construction which functions to rigidly and inflexibly clamp the beaded shoulder into a permanent fluid-tight joint and prevent the possibility of the unfolding or disintegration of the beaded shoulder. He was not alone concerned with an armoring element. This feature of his ring was incidental; it was the formation of a *452 “fluid-tight joint” in all its essential detail toward which he, Young, directed his efforts, not to the existing multiple folding beaded seam which was old in the art, but a clamping, interlocking fluid-tight joint accomplished by the discovery of a clamping ring which would function to interlock the parts and permanently retain them in their proper position and relationship to effect the intended purpose. Young’s interlocking clamping ring, as compared with the disclosures embodied in the pots and cans of the Iron Clad Company, performed all the functions intended by the Iron Clad rings, and the added service of clamping and interlocking the parts into a fluid-tight joint, a novel form of construction to which the courts have awarded by repeated decisions the exercise of invention.
To establish anticipation of a patented-device by oral testimony with respect to an unpatented device alleged to be similar, imposes upon the defense the burden of so doing by such a clear preponderance of the evidence as to remove all reasonable doubt. Quoting from the Supreme Court in The Barbed Wire Patent case, 143 U. S. 275, 284, we find this language:
“We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory and beyond a reasonable doubt.”
See also Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 60.
The defendant introduced in evidence a dilapidated specimen of a steel barrel alleged to be a Mauser barrel manufactured in Germany and said to have been introduced into the United States on a date antedating the patentee Young's application in the Patent Office. The exhibit itself bore no marks of identification or any indication of the date of its manufacture or where it came from. To sustain the fact the testimony of a witness was taken, who testified that he dis *453 covered tbe exhibit in the basement of a dwelling house at 27 State Street, North Adams, Massachusetts. The witness possessed no knowledge of the character or construction of the exhibit, was himself engaged in the real-estate business, and attached no significance to the exhibit more than to any other cast-off and abandoned article as rubbish. The witness removed with his family from the above premises, leaving the exhibit in the cellar, having rented the premises, and neither saw nor concerned himself about the exhibit until some time shortly after his removal he discovered the exhibit used as an urn for flowers set up in the front yard of the premises. The witness did not pretend to possess technical information as to the construction of the exhibit. As a matter of fact, he had not the slightest idea what the exhibit originally was. Photographs were taken of the exhibit and introduced in the record. The witness in fixing the date of his discovery of the exhibit fastens it upon the latter part of the year 1903; his reasons for this positiveness are rested upon the fact that his mother-in-law began to paint chinaware in 1902 and continued so to do until 1905, and also the determination of his mother-in-law in 1903 to place a gas oven in the cellar, which necessitated the removal of the exhibit to a different location in the cellar. In 1907 the witness returned to 27 State Street and remained there until 1912. He does not state the status quo of the exhibit during this five-year period, but does identify the exhibit as used by his successor tenant as a flower pot some time in April or May, 1912. The witness’s testimony was taken in New York on July 14, 1927, twenty-four years subsequent to the discovery of the exhibit and fifteen years subsequent to its use as a front-yard flower urn. It is, of course, possible to comparatively fix a date by recurring to a contemporaneous event which impressed itself upon the mind and memory at the time of its occurrence. In patent litigation involving the validity of a granted patent right, with the burden of proof upon the challenging party, courts unquestionably proceed with a high degree of caution in according probative effect to oral proof of the character set forth above, to establish anticipation or prior public user. The weakness and character of oral proof under the circumstances, fraught as it is with the inherent frailty of human memory, called into being by past events long since forgotten, *454 together with all the attending possibilities of mistake and error, render its corroboration extremely necessary and important when private rights and individual property rights are made to depend upon its accuracy. We find it impossible to ascribe a positive date to the advent of the exhibit in the United States without more reliable proof than emanates from a single witness whose memory of the event is predicated upon the fact of his mother-in-law's determination to paint chinaware.
Aside from what has been said, the dilapidated condition of the exhibit, its long exposure to the elements, and its admitted abandonment as rubbish preclude an accurate detail of its original construction. The court can not find that its condition when discovered by the defendant after this case was instituted reflected its original form of construction. We can not possibly know what may or may not have been done to it during this long period of time, whether changes were or were not made in its formation, or when or by whom they may have been made. We may, we think, grant that the exhibit is a Mauser barrel and that it retained its original form of construction. Still we are confident that Finding XVII is established by the record.
Giving to the repeated decisions of the courts, upon the issue of the validity of the Young patent, the degree of importance due judicial precedents as determinative factors in subsequent suits involving a like contention, we can not hold that Young’s conception and reduction to practice involved no more than mechanical skill. Young was far from a novice in barrel construction. He was confessedly familiar with the art, and while a first and superficial approach to his patent, in view of its simplicity, might well occasion doubt as to the exercise of invention, a careful study of the prior art clearly discloses that he did in fact invent a new and novel clamping and interlocking ring which functioned successfully to meet the wants and necessities of the art. It is true his patent is a limited and a narrow one, but its reception by the trade, its acknowledged novelty by practically all engaged in the manufacture of similar containers, are exceedingly potent facts in the establishment of its recognition as something not previously in existence and most *455 worthy of adoption. It has been uniformly held that an extensive commercial usage and enjoyment of a patent, its acceptance by the trade generally as a departure from existing devices, add weight to the degree of protection a granted patent is entitled to under the law. Southern Textile Machinery Co. v. United Hosiery Mills, 33 Fed. (2d) 862; Miller Industries Co. v. Emery Thompson Co., 28 Fed. (2d) 420.
INFRINGEMENT
The parties having stipulated that the case shall be remanded to a commissioner to take additional testimony as to the amount of compensation to which the plaintiff may be entitled under the allegations of the petition and the judgment of this court, we need not now enter upon the issue of infringement except as it appears from the argument of counsel and their briefs. We think that beyond doubt the Cleveland and Metalware barrels infringe. The Circuit Court of Appeals for the Sixth Circuit so held, and we find no new prior art of sufficient importance to depart from that decision. As to the Wilson and Bennett barrels a different situation obtains. Prior decisions of the courts, heretofore cited, and the specifications and claims of the Young patent, if we correctly apprehend their scope and meaning, sustain the validity of the Young patent upon its new and novel method of interlocking and clamping together the beaded shoulder. Young did conceive the possibility of so constructing a chime or malleable ring overlapping the flanged head of the barrel, and by bending its locking flange under pressure so as to encircle the shoulder, thereby securely and inflexibly clamping the parts together in such a manner that they were incapable of separation except by destruction of the same. As stated in plaintiff’s brief, Young’s patent securely locked the chime ring in position, it prevented a bulging of the head; it locks the inner or beaded shoulder against unrolling, and it protects the shoulder or beaded seam from external usage. Undoubtedly the Young patent accomplished the above things. However, Young’s patent, designed to do what the above art exacted, is, as previously observed, limited to the advancement indicated by his claims and in the way and manner he conceived it should be *456 accomplished. The novel feature of Young’s device resided in its clamping function, its ability to substitute itself for previous methods, effect the discarding of previous elements inefficiently employed to do the same thing, and thereby bring into being a fluid-tight joint. Young encircled the beaded shoulder with his clamping ring for the basic purpose of rendering the beaded shoulder fluid-tight. No one denies that beaded shoulders were old. The Reynolds patent #881951 exhibited a clamping ring. Young prevailed over the Reynolds patent by a narrow margin, so that in our opinion infringement may alone be predicated upon the use of a chime ring designed and intended to function as Young’s ring did. In other words, it is not alone the form and

design of the ring which results in infringement, but its use and location in such a way and method to accomplish the clamping function, the predominating and essential novelty of Young’s invention.
The Wilson and Bennett barrel formed a beaded shoulder by bending the body over itself and bending the flanged head of the barrel around the same, crimped one upon the other, employing a sealing fluid to fill up irregularities and render the joint fluid-tight. Over this beaded shoulder, formed as had long since been formed, Wilson and Bennett located a chime ring interiorly larger than the beaded seam, which in turn has its outer edge or flange turned down, coming in contact only with the entire upper and a small por *457 tion of the lower circumference of the shoulder, leaving: as disclosed by the following figure an open or vacant space (C), indicating in our opinion a lack of any "squeezing or clamping” effect. We also insert illustration of the Young patent for comparison.
The evidence establishes that the Wilson and Bennett ring does not function as a clamping one, and that the bent-over portion is intended and functions only to hold the ring in its location where it serves as an armoring or protective device. The physical exhibit of the Wilson and Bennett ring, reproduced by the above illustration, convinces us that the bent-over portion of its outer edge or flange is so formed that contact with the lower circumference of the shoulder is made and designed for the single purpose of obtaining such pressure as will secure the ring in place. There is no doubt that the chime ring of the Wilson and Bennett barrel “cooperates with the inner joint so as to resist removal of the-ring.” This feature of the Young patent was old. Chime rings as armoring or protective devices were old. Wilson and Bennett were at liberty to employ a ring as such, and of course they could not escape infringement by a mere alteration or rearrangement of parts of the Young patent to profit by the result achieved by Young. The vital issue is confined to the functioning of the ring, its use to so interlock the beaded shoulder as to make in connection therewith an impervious fluid joint. This we think Wilson and Bennett did not do. As was said by the court in Deister Concentrator Co. v. Deister Mach. Co., 241 Fed. 379, 384:
“While a mere change in the location of elements will ordinarily be disregarded, when the same function is performed in the same way and with the same result, yet when, as in this case, a specific location is claimed as essential to the conception, a change therefrom that is not a mere subterfuge will avert the charge of infringement.”
The Circuit Court of Appeals for the Sixth Circuit in the case of this plaintiff against the Cleveland Steel Barrel Company (supra), in denying damages to the plaintiff for alleged infringement by the Cleveland Company of plaintiff's (Young) patent, in the manufacture of its second or new type of barrel, in language which is clear points out the vital element in the Young invention and the differentiating *458 features which removed the charge of infringement. The court said:
“In defendants’ new type, the manner of attaching this chime ring to the interlocldng joint is wholly different from the method employed in its old construction, or in the patent in suit, and is substantially the same as in Reynolds, 621540, which consists of a recess or depression on the inner side of the flange, into which the chime ring is fitted, and which holds it in place. This flange ring extends over the top and the outside of the interlocldng joint, but its outer end is not fastened or folded under the shoulder on the outside, produced by the interlocldng seam, which, as heretofore stated, is the sole advance of Young over the prior art. This new construction is shown in the following cut: * * *
“This chime ring is held in place by this recess or shoulder on the inner side of the flange, and pressure on the upper and outer surface, as in Reynolds, which feature of construction Young particularly sought to avoid, as appears in lines 28 to 35, inclusive, of Young’s specifications. It is clear, therefore, that the defendants’ new type of construction is not an infringement of the Young patent.” (268 Fed. 536, 539-540.)
There was involved, as in this issue, all the constructive features of the Young patent save one, and that single •exception was sufficient in the court’s opinion to distinguish one from the other in its functioning elements. If the change in form manifest from the Wilson and Bennett ring, even if not so intended, did function as a clamping ring, the same as Young’s, infringement would follow. What we believe to be the established fact is that the alleged infringing ring •does not function as a clamping ring, but is designedly formed and located so as to avoid clamping, reliance being placed exclusively upon its presence as a protective element and no more. Wilson and Bennett were studiously careful to omit excessive pressure in fitting their ring to the beaded shoulder. Excessive pressure when applied results in the ■disintegration of the beaded shoulder instead of its preservation. The location of the bent portion of the ring demonstrates this fact. In our opinion the Wilson and Bennett .ring departs from the Young patent; it fails to avail itself •of the vital novelty of the same, and to that extent breaks .away from Young’s conception and resorts to what was old In the art. No infringement may be predicated upon the •same.
*459 Judgment for the plaintiff, the amount to be later ascertained in accord with the following order: The case is referred to Commissioner Myron M. Cohen with instructions to take proof with respect to the amount of compensation due the plaintiff in accordance with this opinion. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.